UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELL JOHNSON,

   Plaintiff,       Case No. 2:19-cv-11569
             District Judge Arthur J. Tarnow
v.            Magistrate Judge Anthony P. Patti

ANDREW MEISNER, *et al.,*

   Defendants.
_____/

## REPORT AND RECOMMENDATION REGARDING SEVERAL MOTIONS TO DISMISS (ECF Nos. 9, 10, 13, 17, 22 and 50) and TO STAY THIS MATTER PENDING DECISIONS IN *RAFAELI* & *FREED*

**I. RECOMMENDATION:** The Court should **DENY WITHOUT PREJUDICE** the dispositive motions filed by the Southfield Neighborhood Revitalization Initiative (SNRI) / Southfield Non-Profit Housing Corporation (SNPHC) Defendants (ECF No. 9), the Oakland County Defendants (ECF No. 10), and the City of Southfield Defendants (ECF No. 13) and administratively **STAY** the case as to these defendants pending the decisions in *Rafaeli, LLC v. Oakland Cty.*, No. 156849 (Mich.) and *Freed v. Thomas*, No. 18-2312 (6th Cir.). Additionally, the Court should **GRANT** Defendant Habitat for Humanity's motion to dismiss (ECF No. 17), **GRANT** Defendant MMRMA's motion to dismiss (ECF No. 22), and **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** Defendant Sciopu's motion to dismiss and for sanctions (ECF No. 50).

## II.    REPORT:

### A.    State Court History

The instant lawsuit concerns the property commonly known as 5000 Town Center, Unit 1304, Southfield, MI 48075, which was conveyed to Dell Johnson as early as 2012 for consideration of $41,000.00.  (ECF No. 1, PageID.22-23.)  On June 7, 2016, the Oakland County Treasurer filed a property tax foreclosure action as to multiple pieces of real property, seemingly including Johnson's condominium.  *See In the Matter of the Petition of the Treasurer's Office of the County of Oakland, Michigan, for the Foreclosure of Certain Lands for Unpaid Property Taxes*, Case No. 2016-153362-CZ (Oakland County Circuit Court).

On January 17, 2017, Johnson agreed to pay his past due 2013 property taxes ($2,711.72) before February 28, 2017.  He appears to have paid a total of $2,400.00 on February 27, 2017.  On or about March 6, 2017, he paid the remaining $311.72, plus $2.67 for an additional week of interest, and signed a 2017 LS Delinquent Property Tax Payment Plan, within which he committed to paying $260 per month to the Oakland County Treasurer toward his property tax delinquency for 2014 and 2015.  The first payment was to be received before March 31, 2017.

Meanwhile, it appears that, on February 8, 2017, judgment was entered vesting absolute title to the property in the Oakland County Treasurer.  (ECF Nos.

2

9-3, 13-2; *see also* ECF No. 1, PageID.23.)  At the same time, Oakland County Treasurer, Andrew E. Meisner, signed a notice of judgment.  (*Id.*)  Within that calendar year, the property was twice conveyed:  (1) on July 31, 2017, Oakland County Chief Deputy Treasurer, Jody Weissler DeFoe, signed a deed, which conveyed in fee simple interest to grantee City of Southfield for the sum of $8,296; and, (2) three months later, on October 31, 2017, Mayor Kenson J. Siver and City Clerk Nancy L.M. Banks signed a quit claim deed, which quit claimed the City of Southfield's interest to Southfield Neighborhood Revitalization Initiative, L.L.C. (SNRI) for the sum of $1.00.  (ECF No. 1, PageID.23.)[1]

Johnson's efforts in 2018 to set aside the judgment of foreclosure were unsuccessful.  On or about March 21, 2018, Johnson, then represented by counsel, filed a motion to set aside judgment of foreclosure, which the court denied on April 30, 2018.  (ECF Nos. 9-4, 13-3, 13-4.)  Johnson filed a *pro se* motion for reconsideration, which the court denied on May 22, 2018.  (ECF Nos. 13-5, 13-6.)

---

[1] The Undersigned takes judicial notice of:  (1) Oakland Country Treasurer Delinquent Property Tax Past Due Payment (January 17, 2017); (2) the 2017 LS Delinquent Property Tax Payment Plan (March 6, 2017); (3) the Deed (July 31, 2017); (4) the Quit Claim Deed (October 31, 2017); and, (5) Oakland County Treasurer's Office Payment Progress Reports (March 6, 2017 & November 28, 2017).  *See Johnson v. City of Southfield, et al.,* Case 2:18-cv-12348-AJT-APP (E.D. Mich.) (ECF No. 7-2, PageID.56, 58-59, 61, 63; ECF No. 28-4, PageID. 459, 461, 463.)

On June 11, 2018, SNRI secured a possession judgment.  (ECF Nos. 9-5, 9-6 [Case No. LT 18 0991 (46th District Court)].)

**B.    Prior E.D. Mich. Case**

On July 27, 2018, Johnson initiated a lawsuit *in pro per* against Defendants City of Southfield, Oakland County, Andrew E. Meisner, Jody Weissler Defoe, and SNRI.  *Johnson v. City of Southfield, et al.*, Case No. 2:18-cv-12348-AJT-APP (E.D. Mich.).  Thereafter, counsel entered an appearance on Plaintiff's behalf and, on August 27, 2018, filed an amended complaint, which alleged, *inter alia*, violations of Plaintiff's rights to due process, just compensation, and equal protection.  Among other things, Johnson generally alleged that "[t]he taking of [his] property and equity is an unlawful government taking without compensation, and without proper notice to [him]."  (*Id*., ECF No. 13, PageID.179 ¶ 10.)

On January 8, 2019, the Court granted Defendant SNRI's and the County Defendants' motions to dismiss, entered judgment, and closed the case.  *Johnson v. City of Southfield*, No. 18-12348, 2019 WL 130291 (E.D. Mich. Jan. 8, 2019).  (*See also* ECF Nos. 9-2, 22-2, 50-2.)

**C.    The Instant Case**

Plaintiff filed the instant case *in pro per* on May 29, 2019.  (ECF No. 1.)[2]

The initial pleading names a multitude of Defendants, which can be grouped, based

upon the caption of the complaint, as follows:

- The Oakland County Defendants (the County and Andrew Meisner)

- The 5000 Town Center Associates Limited Partnership Defendants (the Partnership, Elena Sciopu, and Gary A. Taback)

- Defendant Habitat Company of Michigan, LLC

- Defendant Michigan Municipal Risk Management Authority (MMRMA)

- The City of Southfield Defendants (the city and 10 individuals)

- The Southfield Non-Profit Housing Corporation (SNPHC) Defendants (the Corporation and 7 individuals)

- The SNRI Defendants (the Initiative and 3 individuals)

- Defendant Habitat for Humanity (HFH)

(ECF No. 1 at 1-2.)  By comparison, the "Parties" section of Plaintiff's complaint

does not list the Oakland County Defendants.  (*See* ECF No. 1 at 11-13 ¶¶ 9-15.)

---

[2] Plaintiff Johnson's May 29, 2019 complaint bears a striking resemblance to Plaintiff Edwards's May 9, 2019 amended complaint in Case 2:19-cv-10047-PDB-APP (E.D. Mich.).  In fact, Plaintiff Johnson attaches to some of his filings the City of Southfield's October 16, 2018 letter to Edwards.  (ECF No. 20, PageID.23-24; ECF No. 26, PageID.657-658; ECF No. 27, PageID.703-704; ECF No. 28, PageID.743-744.)

Lest there be any confusion, Plaintiff identifies the Habitat Company of Michigan, LLC, as "the management company of 5000 Town Center," and Habitat for Humanity of Oakland County as "a Michigan based corporation . . . ."  (ECF No. 1, PageID.12 ¶¶ 11, 14.)

Plaintiff's complaint begins with a 7-page, narrative "introduction."  (ECF No. 1, PageID.3-10.)  However, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  Looking to the numbered paragraphs, *which bear marked similarities to those in the amended complaint filed by counsel in Plaintiff's prior federal case*, Plaintiff generally alleges that "[t]he taking of [his] property <u>and equity</u> over and above the fine for the delinquent taxes is an unlawful government taking without just compensation and an infringement of [his] Eighth and Fourteenth Amendment rights under the U.S. Constitution."  (ECF No. 1, PageID.11 ¶ 6 (emphasis added).)  Although Plaintiff's operative pleading mentions several sources of authority, Plaintiff's *federal* equity-based causes of action include:

> **(1)**   alleged violations of his rights to just compensation and freedom from excessive fines, *i.e.*, a claim based upon the Fifth Amendment and/or the Eighth Amendment.
>
> **(2)**   an alleged violation of his right to Equal Protection, *i.e.*, a claim based upon the Fourteenth Amendment, in connection with which Plaintiff seems to suggest that distribution of

proceeds from a GPTA foreclosure for delinquent property taxes should occur like distribution of proceeds under Mich. Comp. Laws § 600.3252 for a mortgage foreclosure, and he compares the process in Oakland County with that of Wayne County; and,

**(3)**  a municipal liability claim against the Oakland County Defendants, which additionally mentions deprivation of his right to due process, *i.e.*, presumably a claim based upon the Fourteenth Amendment.

(ECF No. 1, PageID.15-18 ¶¶ 31-45.)  That Plaintiff intended his federal constitutional claims to be based on the Fifth, Eighth and Fourteenth Amendments is consistent with other portions of his operative pleading.  (*See*, *e.g.*, ECF No. 1, Page.ID 4, 8-11, 15.)  However, it is worth noting:  "Given that the [Eighth] Amendment is addressed to bail, fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments."  *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262 (1989).  Plaintiff seeks injunctive, as well as other forms of, relief.  (ECF No. 1, PageID.18-20 ¶¶ 46-48, A-F.)

### D.  Pending Matters

Judge Tarnow has referred this case to me for all pretrial matters.  Presently, there are several pending dispositive motions:  **(1)** the SNRI and SNPHC Defendants' July 12, 2019 motion to dismiss (ECF No. 9); **(2)** the Oakland County Defendants' July 15, 2019 motion for dismissal (ECF No. 10); **(3)** the City of

Southfield Defendants' July 15, 2019 motion to dismiss and for sanctions (ECF No. 13); **(4)** Defendant HFH's July 25, 2019 motion to dismiss (ECF No. 17); **(5)** Defendant MMRMA's August 12, 2019  motion to dismiss (ECF No. 22); and, **(6)** Defendant Sciopu's October 22, 2019 motion to dismiss and for sanctions (ECF No. 50).  Defendants 5000 Town Center Associates, Gary Taback, and Habitat Company of Michigan have yet to appear.[3]

Plaintiff has filed responses.  (ECF Nos. 20, 26, 27, 28, 34, 53.)  Defendants have filed replies.  (ECF Nos. 29, 30, 31, 33, 43, 54.)[4]

### E.    Discussion

#### 1.    Plaintiff does not wish to reverse the GPTA tax foreclosure; rather, he seeks return of the equity.

Plaintiff's case stems from the administration of Michigan's GPTA, which is codified at Mich. Comp. Laws §§ 211.1-211.157.  (ECF No. 1, PageID.10, 18 ¶¶ 2, 45.)  The GPTA contains provisions regarding "reception and annulment,"

---

[3] According to the State Bar of Michigan's Member Directory, attorney Gary A. Taback is deceased.  *See* www.michbar.org, "Member Directory," last visited Oct. 22, 2019.

[4] Plaintiff's September 5, 2019 sur-reply concerned the City of Southfield Defendants' dispositive motion; however, on September 9, 2019, the sur-reply was stricken from the record.  (ECF Nos. 13, 35, 36.)  Thereafter, Plaintiff filed a September 10, 2019 "reply brief," which was docketed three times.  (ECF Nos. 39, 40, 41.)  Plaintiff filed another "reply brief" on September 13, 2019.  (ECF No. 42.)  These, too, should be stricken from the record.  E.D. Mich. LR 7.1(d)(1) ("Briefs Required and Permitted.").

including one that addresses "[a]ctions for recovery of monetary damages after

judgment for foreclosure[.]"  Mich. Comp. Laws Ann. § 211.78*l*.  In addition:

> If property purchased by a city, village, township, or county under this
> subsection is subsequently sold for an amount in excess of the
> minimum bid and all costs incurred relating to demolition, renovation,
> improvements, or infrastructure development, the excess amount shall
> be returned to the <u>delinquent tax property sales proceeds</u> account for
> the year in which the property was purchased by the city, village,
> township, or county or, if this state is the foreclosing governmental
> unit within a county, to the land reutilization fund created under
> section 78n.

Mich. Comp. Laws § 211.78m(1) (emphasis added).  Distribution of delinquent tax

property sales proceeds is addressed in Mich. Comp. Laws § 211.78m(8).

In this lawsuit, Plaintiff estimates the subject property's value at over

$140,000 and claims that the sale of his property for less than $9,000 in delinquent

property taxes has stripped him of "over $131,000 in equity . . . ."  (ECF No. 1,

PageID.10, 13-14 ¶¶ 4, 22-24.)  Plaintiff seems to recognize that "[t]he *Rooker–*

*Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim

alleging error in a state court decision."  *Riser v. Schnieder*, 37 F. App'x 763, 764

(6th Cir. 2002); *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608 (6th

Cir. 2008) ("[t]he federal district courts do not hear appeals from state courts.").

Perhaps anticipating such a defense, Plaintiff explains that he "does not seek to

reverse the tax foreclosure per the Rooker-Feldman doctrine, but requests just

compensation and return of the *equity* in his property."  (ECF No. 1, PageID.14 ¶

27 (emphasis added).)  In other words, he seeks this Court's involvement "only as it relates to his federal rights of equal protection, due process, just compensation, and right to profit solely from the fruits of his labor over 7 years and right to be free from excessive fines per the Eight[h] Amendment."  (ECF No. 1, PageID.15 ¶ 30.)

### 2.    Plaintiff Johnson's claims are not unique to the federal courts, or, for that matter, Michigan's courts.

#### a.    The *Rafaeli* cases

In 2014, Rafaeli, L.L.C. and Great Lakes Affordable Housing, L.L.C. (GLAH) filed a lawsuit against Wayne and Oakland Counties and their respective Treasurers.  Case No. 4:14-cv-13958-TGB-MKM (E.D. Mich.).  Rafaeli and GLAH alleged, among other things, that "[t]he failure of the GPTA to provide a basis to and an avenue for recovery of the surplus proceeds or any equity permits a taking without just compensation and is therefore unconstitutional."  (*Id*. [ECF No. 1 ¶ 90].)  Judge Berg granted Defendants' motion to dismiss.  *Rafaeli, LLC v. Wayne Cty.*, No. 14-cv-13958, 2015 WL 3522546 (E.D. Mich. June 4, 2015).  In so doing, he explained that "before a taking claim may be considered ripe for adjudication in this Court, Plaintiffs must first bring an inverse condemnation claim in state court, seeking to recover their forfeited surplus equity."  *Rafaeli*, 2015 WL 3522546, at *9.  *See also Hammoud v. Cty. of Wayne*, No. 15-CV-14461,

10

2016 WL 4560635, at *4-*6 (E.D. Mich. Sept. 1, 2016) (Levy, J.), *aff'd sub*

*nom. Hammoud v. Wayne Cty.*, 697 F. App'x 445 (6th Cir. 2017).

On June 8, 2015 – merely four days after Judge Berg dismissed the federal

case – Rafaeli and Andre Ohanessian filed a state court case against Oakland

County and its Treasurer.  Case No. 2015-147429-CZ (Oakland County).  On

October 8, 2015, that court granted the motion for summary disposition, and, on

December 8, 2015, it denied the motion for reconsideration and leave to file an

amended complaint.  The Michigan Court of Appeals affirmed.  *Rafaeli, LLC v.*

*Oakland Cty.*, No. 330696, 2017 WL 4803570, at *1 (Mich. Ct. App. Oct. 24,

2017).  Notably, after acknowledging Judge Berg's June 4, 2015 opinion in *Rafaeli*

and Judge Kethledge's February 10, 2017 dissent in *Wayside Church*, the

concurring opinion stated:  "I conclude we must reject plaintiffs' claim despite

what appears to be *an obvious injustice that requires remedial action*."  *Rafaeli*,

2017 WL 4803570, at *6 (Shapiro, J., concurring) (emphasis added).

On December 4, 2017, Rafaeli filed an application for leave to appeal.  On

November 21, 2018, the Michigan Supreme Court granted leave to appeal and

directed the parties to "address whether the defendants violated either the Takings

Clause of the United States Constitution, U.S. Const., Am. V, or the Takings

Clause of the Michigan Constitution, Const. 1963, art. 10, § 2, or both, by retaining

proceeds from the sale of tax foreclosed property that exceeded the amount of the

11

tax delinquency in accordance with MCL 211.78m(8)(h)." *Rafaeli, LLC v. Oakland Cty.*, No. 156849, 503 Mich. 909, 919 N.W.2d 401 (Nov. 21, 2018) (emphasis added).  Supplemental briefing was due on December 13, 2019.  *See Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2019 WL 6359413, at *1 (Mich. Nov. 27, 2019).  Through December 27, 2019, there has been no ruling.

> **b.**   ***Wayside Church v. Van Buren County* (W.D. Mich.)**

On December 11, 2014, Wayside Church and two individuals filed a "class action complaint" against Van Buren County and its Treasurer.  *Wayside Church, et al. v. Van Buren County, et al.*, Case No. 1:14-cv-01274-PLM (W.D. Mich.).  In that case, Plaintiffs generally alleged that their real property was taken for non-payment of real property taxes "without offer, tender or return of the surplus proceeds to Plaintiffs and members of Plaintiff class."  (*Id.*, ECF No. 1, PageID.2-3 ¶¶ 4, 7.)  On November 9, 2015, Judge Maloney denied the motion to dismiss under Fed. R. Civ. P. 12(b)(1) but granted the motion under Rule 12(b)(6).

However, on appeal, the Sixth Circuit vacated the Court's judgment and remanded with instructions to dismiss the case for lack of subject matter jurisdiction.  *Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. Feb. 10, 2017).  When discussing the "Ripeness of Takings Clause Claims," the Sixth Circuit noted:  "For plaintiffs to be obligated to seek redress in the state courts before litigating in federal court, the state procedures must be 'reasonable, certain,

12

and adequate ... at the time of the taking.'"  *Wayside Church*, 847 F.3d at 818

(quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson

City*, 473 U.S. 172, 194 (1985) (quotation omitted)).[5]  The Sixth Circuit concluded,

among other things, that "§ 211.78*l* of the GPTA does not bar Plaintiffs from filing

their Takings Clause claims in state court[,]" and "the district court erred in finding

that the claims were not barred by the Tax Injunction Act and the doctrine of

comity[.]"  *Wayside Church*., 847 F.3d at 820, 822-823.  Nonetheless, for reasons

which will become apparent below, it is helpful to note Judge Kethledge's dissent:

> In this case the defendant Van Buren County took property worth $206,000 to satisfy a $16,750 debt, and then refused to refund any of the difference.  In some legal precincts that sort of behavior is called theft.  But under the Michigan General Property Tax Act, apparently, that behavior is called tax collection.  The question here is—or at least in my view should be—whether the County's action is a taking under the federal Constitution.
> . . .
> . . . the Michigan courts have not yet determined, as a matter of state law, whether a local government's appropriation of property pursuant to the taxing power generally, or to the General Property Tax Act in particular, is a taking to the extent the government takes property worth more than the amount of taxes owed.

---

[5] In *Williamson County*, the Supreme Court granted certiorari "to address the question whether Federal, State, and Local governments must pay money damages to a landowner whose property allegedly has been 'taken' temporarily by the application of government regulations."  *Williamson County*, 473 U.S. at 185.  The Supreme Court concluded that respondent's claim was premature, "whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment."  *Id*. at 200.

*Wayside Church*, 847 F.3d at 823 (Kethledge, C.J., dissenting), *cert. denied sub nom. Wayside Church v. Van Buren Cty., Mich.*, 138 S. Ct. 380, 199 L. Ed. 2d 278 (Oct. 30, 2017).  *See also Lumbard v. City of Ann Arbor*, 913 F.3d 585, 592 (6th Cir. Jan. 10, 2019) ("Federal courts have a 'virtually unflagging' obligation to exercise the jurisdiction that Congress has given them. . . . Congress has given us jurisdiction to hear these takings claims.  Our constitutional order would be better served, I respectfully suggest, if we simply adjudicated them.") (Kethledge, J., concurring) (internal citation omitted), *cert. denied*, 140 S. Ct. 267 (2019).

On March 28, 2017, Judge Maloney dismissed the *Wayside Church* case without prejudice for lack of subject matter jurisdiction.  One year later, on March 28, 2018, Plaintiffs filed a motion to reopen the case, which Judge Maloney granted on March 26, 2019, ordering that "the case shall be held in abeyance pending a decision by the Michigan Supreme Court in *Rafaeli v. Oakland County* and/or the United States Supreme Court in *Knick v. Township of Scott*."  In *Knick*, the Supreme Court granted certiorari "to reconsider the holding of *Williamson County* that property owners must seek just compensation under state law in state court before bringing a federal takings claim under § 1983."  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2169 (2019). [6]

---

[6] *See also O'Connor v. Chatfield*, No. 2:19-CV-00218, 2019 WL 5616865, at *5 (W.D. Mich. Oct. 31, 2019) (where Plaintiff alleged, *inter alia*, "an unlawful

Although the Michigan Supreme Court has yet to issue its decision in
*Rafaeli*, the United States Supreme Court issued the *Knick* decision on June 21,
2019.  It concluded that "the state-litigation requirement imposes an unjustifiable
burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence,
and must be overruled[,]" "[a] property owner has an actionable Fifth Amendment
takings claim when the government takes his property without paying for it[,]" and
"a government violates the Takings Clause when it takes property without
compensation, and that a property owner may bring a Fifth Amendment claim
under § 1983 at that time."  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162,
2167, 2177 (2019).  Stated otherwise, "[t]he state-litigation requirement
of *Williamson County* is overruled.  A property owner may bring a takings claim
under § 1983 upon the taking of his property without just compensation by a local
government."  *Knick*, 139 S. Ct. at 2179.  Thus, *Knick* overruled a case upon which
the Sixth Circuit's February 10, 2017 decision in *Wayside Church* relied.
Nonetheless, as of December 11, 2019, *Wayside Church* remains "in abeyance
pending the Michigan Supreme Court's decision in *Rafeli*."  *See* Case No. Case
1:14-cv-01274-PLM (W.D. Mich.) (ECF No. 81, PageID.878).

---

taking of his property[,]" and within the discussion of subject matter jurisdiction,
Judge Maloney stated:  "The Sixth Circuit did not have the benefit of the [October
24, 2017] Michigan Court of Appeals decision [in *Rafaeli*] when it remanded
*Wayside Church* [on February 10, 2017] with instructions to dismiss that case.").

c.   *Freed v. Thomas, et al.* **(E.D. Mich.)**

On October 28, 2017, Donald Freed filed a lawsuit against Gratiot County and its Treasurer, the introduction to which clearly refers to Judge Kethledge's dissent in *Wayside Church*, although without attribution. *Freed v. Thomas, et al.*, Case No. 1:17-cv-13519-BAF-PTM (E.D. Mich.) (ECF No. 1 ¶ 2.) Freed alleged unconstitutional takings and excessive fines, and his takings claim referenced the then-4-day-old Michigan Court of Appeals's decision in *Rafaeli*. (*Id.*, ECF No. 1 ¶¶ 26-29.) For example, Freed alleged that "the State of Michigan's courts recently and clearly failed to recognize such a taking as existing as a matter of state law[.]" (ECF No. 1 ¶ 28.) Among other things, Freed sought "an order . . . declaring the General Property Tax Act, Act 206 of 1893, as applied to [him][,] . . . unconstitutional and enjoin[ing] its future application in the same manner against [him] by Defendants[.]" (*Id.*, ECF No. 1 ¶ 39b.)

Judge Friedman denied Defendants' motion to dismiss. *Freed v. Thomas*, No. 17-CV-13519, 2018 WL 1964669, at *1 (E.D. Mich. Apr. 26, 2018). However, Judge Friedman later vacated that order and dismissed the complaint for lack of subject matter jurisdiction. *Freed v. Thomas*, No. 17-CV-13519, 2018 WL 5831013, at *1 (E.D. Mich. Nov. 7, 2018). Importantly, his description of Freed's case is similar to the case presently before this Court:

16

> The heart of plaintiff's complaint is that this statutory scheme is unconstitutional because it provides no mechanism for the return to the delinquent taxpayer of the "surplus equity" (i.e., the difference between the equity and the tax bill) or, in the event that the property is sold for less than fair market value, for the return to the delinquent taxpayer of the difference between the sale proceeds and the tax bill.

(*Freed*, 2018 WL 5831013, at *2.)  Acknowledging that "[t]he obvious inequity of this system has not gone unnoticed by the courts[,]" and referring to *Wayside Church* and *Rafaeli, L.L.C.*, Judge Friedman concluded:  "Whether correctly decided or not, *Wayside Church* is binding on this Court."  (*Id*. at *2-*3.)

Freed immediately filed a notice of appeal.  The case was argued at the Sixth Circuit on May 9, 2019.  *Freed v. Thomas, et al.*, No. 18-2312 (ECF No. 53.) Since then, the Sixth Circuit has accepted "supplemental briefing as to if and how the Supreme Court's recent decision in *Knick* . . . affects this case."  (*See id*. at ECF Nos. 54-63.)  Moreover, the court is in the process of accepting supplemental briefing as to "whether the Court should wait until after the Michigan Supreme Court decides *Rafaeli* . . . before issuing its opinion in this case."  (*See id*. at ECF Nos. 66-72).  Through December 27, 2019, the Sixth Circuit has not issued its decision.

      **3.**      **The Court should deny without prejudice the SNRI / SNPHC, Oakland County, and City of Southfield Defendants' motions to dismiss (ECF Nos. 9, 10 & 13) and administratively stay this case as to these defendants.**

In July 2019, the Oakland County, SNPHC / SNRI Defendants, and City of Southfield Defendants moved for dismissal based upon Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). (ECF No. 9, PageID.85, 88; ECF No. 10, PageID.177; ECF No. 13, PageID.338.) Among other assertions, (a) the SNPHC / SNRI Defendants consider this lawsuit "Plaintiff's second attempt in Federal Court to challenge the foreclosure of real property due to Plaintiff's nonpayment of taxes[,]" (ECF No. 9, PageID.89); (b) the Oakland County Defendants contend this is "the second action filed in this Court alleging the same or similar constitutional violations as alleged in the state court action[,]" (ECF No. 10, PageID.178 ¶ 4); and, (c) while the City of Southfield Defendants acknowledge that Plaintiff *now* asserts claims for just compensation, excessive fines, equal protection and municipal liability, these Defendants also claim that, "[a]s before, Plaintiff is merely asking for appellate review of the state court judgment of foreclosure by couching his claims in constitutional terms." (ECF No. 13, PageID.335, 338.)

Yet, whatever similarities exist between the August 27, 2018 and May 29, 2019 operative pleadings in Plaintiff's prior and instant federal cases, it is important to note that, in the interim, the Michigan Supreme Court granted leave to appeal in *Rafaeli* (November 21, 2018), *Wayside Church* was reopened and held in abeyance (March 26, 2019); and, the Sixth Circuit heard oral argument in *Freed*

18

(May 9, 2019).  Perhaps these events were incentives for Plaintiff to re-engage the Court's attention.

More to the point, in what appears to be a paragraph that is unique to the instant lawsuit, Johnson makes clear that he *does not* seek to reverse the GPTA tax foreclosure.  (ECF No. 1, PageID.14 ¶ 27.)  This new assertion, even if accompanied by equity-based causes of action that are strikingly similar to those in Plaintiff's prior action, emphasizes that Johnson's May 29, 2019 operative pleading raises issues similar to those in *Rafaeli*, *Wayside Church*, and *Freed*.  Yet, *Rafaeli* is under consideration by Michigan's Supreme Court, the Sixth Circuit's opinion in *Wayside Church* has been called into question by the United States Supreme Court's decision in *Knick*, and the Sixth Circuit is considering whether to pause its opinion in *Freed* pending the ruling in *Rafaeli*.

Moreover, these moving parties have not engaged in robust briefing on *Rafaeli*, *Wayside Church*, *Freed*, or, for that matter, *Knick*.  For example, the SNPHC and SNRI Defendants' July 12, 2019 dispositive motion only mentions *Rafaeli* when citing Judge Berg's June 4, 2015 opinion.  (ECF No. 9, PageID.99; ECF No. 9-1.)  Also, the Oakland County Defendants' and the City of Southfield Defendants' July 15, 2019 dispositive motions do not address these cases.  (ECF No. 10, ECF No. 13.)  Thus, without engaging in any analysis as to whether any of these Defendants have violated their duty of candor toward the tribunal under

MRPC 3.3(a)(2), given the timing of their briefing and the somewhat tentative posture of the cases discussed above, it is understandable that Plaintiff Johnson, who is litigating *in pro per*, did not cite these matters in his responses.  (ECF Nos. 26, 27 & 28.)

Nonetheless, Plaintiff's responses clearly re-emphasize the equity-based nature of his complaint, as each one argues:  "Does a local government violate the federal and state takings clauses by retaining proceeds from the sale of tax-foreclosed property, when the sale yields a windfall surplus over the amount of the tax debt?"  (ECF No. 26, PageID.633; ECF No. 27, PageID.681; ECF No. 28, PageID.724.)  In any event, even if Defendants' replies addressed the alleged retention of proceeds (*see* ECF Nos. 30, 31, 33), briefing on the relevant case law, especially when it is currently being challenged, should occur in the motion itself, so that Plaintiff may adequately respond.

With the relevant case law in flux and the moving parties' failure to adequately brief the relevant case law, it seems inefficient, at this moment, to attempt consideration of the SNRI / SNPHC, Oakland County, and City of Southfield Defendants' pending motions to dismiss.  The Court should deny without prejudice these Defendants' motions to dismiss (ECF Nos. 9, 10 & 13) and should further administratively stay the case as to these defendants until the Michigan Supreme Court issues its decision in *Rafaeli* and the Sixth Circuit issues

20

its decision in *Freed*.  Once those events take place, this Court will be in a better position to determine whether this Court has subject matter jurisdiction over Plaintiff's claims or whether Plaintiff Johnson's operative pleading (ECF No. 1) states a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1),(6).

### 4.     HFH's dispositive motion (ECF No. 17)

Plaintiff's intent to name HFH as a defendant is clear, as he lists it in the case caption and the list of parties. (ECF No. 1, PageID. 2, 12.)  Fed. R. Civ. P. 10(a). Nevertheless, his claim against HFH is unclear.

True, Plaintiff references HFH in his narrative (*see* ECF No. 1, PageID.5, 8); however, as noted above, numbered paragraphs are required for claims or defenses. Fed. R. Civ. P. 10(b).  In his list of the parties, Plaintiff describes Defendant HFH of Oakland County as "a Michigan based corporation with offices in the County of Oakland, State of Michigan." (ECF No. 1, PageID.12 ¶ 14.) Thereafter, he *generally* alleges that:

> . . . principals of comity and subject matter jurisdiction prevent federal court intervention into state taxation matters, because Defendant Meisner is president of the Board of <u>Habitat</u> (one of the named defendants) and his duty to raise taxes in his role as county treasurer are compromised by the duality of his conflict of interest, self-dealing, and Michigan law that prevents arms-length transactions between related parties (*to be borne out through discovery and documents in the Plaintiffs possession*).

21

(ECF No. 1, PageID.14-15 ¶ 28 (emphases added).)  Furthermore, within the *first count* of the complaint, he alleges:

> The County sold the property to the City of Southfield under false pretenses because more than a year before the sale CITY, though its city council records, agreed to accept $1.5 million from the Southfield Non Profit Housing Corporation through a resolution it passed agreeing to accept funds from <u>Habitat for Humanity of Oakland County</u> (of which the County Treasurer Andy Meisner is President of its Board of Directors) in exchange for letting <u>Habitat</u> use CITY's first rights of refusal according to the GPTA, resulting in a windfall of equity for the partners to this scheme (*illegality an impropriety is to be determined through discovery*).

(ECF No. 1, PageID.16-17 ¶ 36 (emphases added).)[7]  In other words, Plaintiff seems to claim that *Defendant Meisner* has a "conflict of interest," between his roles as the county treasurer and (allegedly) the President of HFH's Board of Directors, which results in HFH using the City of Southfield's right of first refusal under the GPTA and "a windfall of equity for the partners to this scheme . . . ."

(ECF No. 1, PageID.14-17 ¶¶ 28, 36; *see also* ECF No. 1, PageID.28.)[8]

---

[7] Paragraphs 28 and 36 of Plaintiff Johnson's complaint are close, if not identical, to Paragraphs 26 and 34 of Mr. Edwards's amended complaint. (*Compare* ECF No. 1, PageID.14-17, *with* Case 2:19-cv-10047-PDB-APP (ECF No. 24, PageID.550, 552).). Therefore, my recommendation as to Plaintiff Johnson's claims against HFH mirrors my recent recommendation as to Mr. Edwards's claims against HFH.  *See* Case No. 2:19-cv-10047-PDB-APP (ECF No. 50, PageID.1263-1266 [Dec. 18, 2019]).

[8] According to HFH of Oakland County's website, Meisner is simply a member of the Board of Directors, *i.e.*, he is not even the Secretary or Treasurer, let alone the President. *See* https://www.habitatoakland.org/about-us/board-of-directors/ (last visited Dec. 9, 2019).

22

In its July 25, 2019 dispositive motion, Defendant HFH admits that "the SNRI entered into an agreement to work with [HFH] as a resource for rehabilitating the homes." (ECF No. 17, PageID.498.)  However, HFH represents that it "does not have any ownership interest in plaintiff's home, nor does it have any title or equity stake in plaintiff's home or the foreclosure process on plaintiff's property."  (*Id*.)  Elsewhere, on the subject of "excess equity," HFH explains that it "cannot possibly have any stake in this foreclosure action as Habitat has never had *any* ownership interest in plaintiff's property."  (ECF No. 17, PageID.503 (emphasis in original).)  Leaving these assertions aside, which seem much more like an unsupported summary judgment argument than an attack on the pleadings, the Complaint in fact fails to state a cognizable claim against this defendant under Rule 8, and this party should be dismissed.

Keeping in mind that Plaintiff does not seek to reverse the GPTA tax foreclosure, Plaintiff's federal cause of action against HFH is ambiguous, at best. To be sure, in his August 2, 2019 response, Plaintiff argues that his complaint states a claim on which relief can be granted and further argues that Defendant HFH is "liable to Plaintiff for the harms he suffered as a result of [HFH] being a contracting partner in SNR's plans to profit by stripping equity from tax foreclosed property owners in Southfield[.]"  (ECF No. 20, PageID.521-524.)  However, even if Plaintiff's response clarifies his claim, "the paramount policies embodied in the

23

well-pleaded complaint rule . . ." include that "the plaintiff is the master of the complaint," and that "a federal question must appear on the face of the complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Here, as to Defendant HFH, it does not.

In sum, as to Defendant HFH, the Court should: **(a)** conclude that Plaintiff's complaint (ECF No. 1) does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2); and, **(b)** grant Defendant HFH's motion to dismiss (ECF No. 17) for "failure to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).

### 5.   MMRMA's dispositive motion (ECF No. 22)

It seems that Defendant MMRMA is only mentioned twice in Plaintiff's complaint, once in the case caption (ECF No. 1, PageID.1) and once in the list of parties, where it is described as "a Michigan based corporation . . . responsible to the loss prevention needs of its members . . . [,]" of which Defendant City of Southfield is allegedly a member. (ECF 1, PageID.12 ¶ 12).

On August 12, 2019, Defendant MMRMA filed a motion to dismiss, preliminarily explaining that it "has no ownership interest in the subject property formerly owned by Plaintiff, nor did it ever receive any proceeds or other compensation in connection with the transfer of the subject property." (ECF No. 22, PageID.566, 579, 583.) Moreover, MMRMA maintains that its "<u>only</u> potential

24

connection to the allegations made in this suit is as the liability coverage provider

for the City of Southfield."  (ECF 22, PageID.579 (emphasis in original).)  While

these assertions of fact seem more appropriate for a summary judgment motion, for

purposes of this motion to dismiss, it is perhaps significant that *Plaintiff fails to*

*allege* any of these things as to MMRMA.  In any event, MMRMA raises three

bases for dismissal, *i.e.*, lack of subject matter jurisdiction, failure to state a claim,

and the doctrine of *res judicata*.  (ECF No. 22, PageID.557, 570-585.)

      The Court need only consider Defendant MMRMA's argument that Plaintiff

has failed "to state a claim upon which relief can be granted[,]" Fed. R. Civ. P.

12(b)(6).  (*See* ECF No. 22, PageID.581-583.)  In sum, the Court should **GRANT**

Defendant MMRMA's motion (ECF 22) to the extent it seeks dismissal of

Plaintiff's claims against it, because the complaint does not provide "a short and

plain statement of the claim [or claims against her] showing that the pleader is

entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Even if Plaintiff's response clarifies

his claim against Defendant MMRMA, *e.g.*, MMRMA has exposure as "a result of

this equity sapping scheme by SOUTHFIELD and the other named defendants."

(ECF No. 34, PageID.824-825), "the paramount policies embodied in the well-

pleaded complaint rule . . ." include that "the plaintiff is the master of

the complaint," and that "a federal question must appear on the face of the

complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).  Here, as to Defendant MMRMA, it does not.[9]

### 6.      Sciopu's dispositive motion (ECF No. 50)

It seems that Defendant Sciopu is only mentioned twice in Plaintiff's complaint, once in the case caption (ECF No. 1, PageID.1) and once as associated with Defendant 5000 Town Center Associates Limited Partnership, apparently as an officer, employee or agent, although which role is unclear. (ECF No. 1, PageID.11-12 ¶ 10).  In other words, the complaint is devoid of any specific allegations as to any actions actually taken or neglected by Sciopu.

On October 22, 2019, Sciopu filed a motion to dismiss and for sanctions. (ECF No. 50.)  In an attached affidavit, she describes herself as a property manager, who is employed by The Habitat Company of Michigan, LLC, but has "no involvement in the transfer of the units owned by co-owners[.]"  (ECF No. 50-

---

[9] In his response, Plaintiff claims that Defendant MMRMA was properly served via certified mail on June 25, 2019.  (*See* ECF No. 34, PageID.804, 828.) Defendant MMRMA replies that it "has never been properly served with Plaintiff's Summons and Complaint."  (ECF No. 43, PageID.879.)  However, even if Defendant MMRMA's August 12, 2019 motion to dismiss (ECF No. 22) was not filed "within 21 days after being served with the summons and complaint[,]" Fed. R. Civ. P. 12(a)(1)(A)(i), Plaintiff's request for "default judgment against MMRMA . . . [,]" (ECF No. 34, PageID.804), should have been filed in a separate Fed. R. Civ. P. 55 motion.  More to the point, Plaintiff's request for entry of a default judgment will be rendered moot if this Court agrees with the Undersigned's recommendation as to Plaintiff's claims against this Defendant.

2, PageID.947-948 ¶¶ 1, 4.)  Defendant Sciopu raises five arguments to support her dismissal request, including one that challenges the timeliness of service under Fed. R. Civ. P. 4(m), and she seeks an award of fees and/or costs based on 28 U.S.C. § 1927 and the Court's inherent authority.  (ECF No. 50, PageID.929, 935-941.)

The Court need only consider one of Defendant Sciopu's dismissal arguments.  In sum, the Court should **GRANT** Defendant Sciopu's motion (ECF 50) to the extent it seeks dismissal of Plaintiff's claims against her, because the complaint does not provide "a short and plain statement of the claim [or claims against her] showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). It is unclear what the claims are against this defendant, and by lumping Sciopu in with the other defendants by mere association, Plaintiff has failed to demonstrate any plausible claim against her.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even if Plaintiff's *motion response* clarifies his claim against Defendant Sciopu, *e.g.*, she and her employer continued to collect monthly maintenance fees from him for several months following the transfer and have yet to refund such

money (ECF No. 53, PageID.1003), "the paramount policies embodied in the well-pleaded complaint rule . . ." include that "the plaintiff is the master of the complaint," and that "a federal question must appear on the face of the complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).  Here, as to Defendant Sciopu, it does not.  Tellingly, Plaintiff admits he "is unaware exactly how Defendant Sciopu and her employer Habitatcorp benefit[] financially from this arrangement or with his property . . . [,]" but Plaintiff "looks forward to the discovery process for answers."  (ECF No. 53, PageID.1003.)  However, "[i]t is not sufficient to say that appropriate allegations to plead a sufficient cause of action will be made after pre-trial discovery."  *American Comm. Ass'n. Local 10, I.B.T. v. Retirement Plan for Employees of RCA Corp. and Subsidiary Cos.*, 488 F. Supp. 479, 484 (S.D.N.Y. 1980), *aff'd without op.*, 646 F.2d 559 (2d Cir. 1980). The Court "does not authorize parties to use an insufficient complaint with a conclusory allegation as a hunting license to discover whether in fact a viable claim may be alleged.  The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made[,] not to discover whether a claim exists."  *Id.*; *see also State Farm Mut. Automobile Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *10 (E.D. Mich., Nov. 26, 2013) (Grand, M.J.) ("A complaint is not 'a hunting license to discovery [as to] whether, in fact, a viable claim may be alleged…'[.]") (citation omitted).

28

While "the evidence obtained through discovery [may be used] to put meat on the bones of the claims asserted" in the pleadings, *Philadelphia Workforce Dev. Corp. v KRA Corp.*, 156 F. Supp.3d 616, 636 (E.D. Pa. 2016), here even the bones are lacking.

Nevertheless, the Court should **DENY WITHOUT PREJUDICE** Defendant Sciopu's motion to the extent it seeks an award of attorney fees and costs pursuant to 28 U.S.C. § 1927 ("Counsel's liability for excessive costs") or under the Court's inherent authority, *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975). (ECF 50, PageID.941.) Preliminarily, Section 1927 concerns conduct by "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof . . . ." 28 U.S.C. § 1927. Moreover, if defendant Sciopu seeks to recover fees and/or costs associated with her defense of the instant lawsuit, the amount of her request is unclear, *i.e.*, she has not provided an invoice from counsel or a proposed bill of costs. Nonetheless, if the Court agrees with the Undersigned's recommended disposition of Defendant Sciopu's motion, it may permit her to re-apply for such fees by a separate motion. *See*, *e.g.*, 28 U.S.C. § 1920 ("Taxation of costs"); Fed. R. Civ. P. 54(d) ("Costs; Attorney's Fees."); E.D. Mich. LR 54.1 ("Taxation of Costs").

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

30

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: December 27, 2019              s/

                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE