UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF DELL JOHNSON,
TIFFANY N. JOHNSON, PERSONAL
REPRESENTATIVE, AN INDIVIDUAL

    Plaintiff,

    v.

ANDREW MEISNER ET AL.

    Defendants.

Case No. 19-11569

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [98] [99] [100] [102]**

On May 29, 2019, Mr. Dell Johnson commenced this action against various local agencies and their directors alleging violations of his constitutional rights to due process, just compensation, and equal protection, for the taking of excess equity from his property's tax foreclosure. (ECF No. 1). Mr. Johnson has since deceased and his estate, represented by Tiffany Johnson, continues to litigate on his behalf. Further, several defendants have been dismissed since the start of litigation. The remaining Defendants are as follows: Oakland County and its Treasurer, Andrew Meisner (Oakland County Defendants); City of Southfield, City Manager Frederick Zorn, Mayor Ken Siver, Former City Attorney Susan Ward-Witkowski, Gerald Witkowski and Treasurer Irvin Lowenberg (Southfield Defendants); Southfield

Neighborhood Revitalization Initiative (SNRI), the Southfield Non-Profit Housing Corporation (SNPHC), Director Frederick Zorn (of both SNRI and SNPHC), Director E'Toile Libbett (Director SNRI) and Mitchel Simon (Director SNPHC) (collectively SNRI Defendants); and Habitat for Humanity (Habitat).

Before the Court are Defendants' Motions to Dismiss [98] [99] [100] [102] filed on January 5, 8, 11, and 20 of 2021 by each group of Defendants. Plaintiff filed a Response [104] on January 28, 2021. Defendants filed Reply Briefs [105] [106] [107] [109] on February 10, 11, 18 of 2021. Plaintiff also submitted a Supplemental Brief [115] on April 6, 2021. The Oakland County, SNRI, and Southfield Defendants have each filed a Response [116] [117] [121] to the Supplemental Brief on April 16 and 20 of 2021.

The Court held a hearing on the motions on July 27, 2021. For the reasons stated on the record[1], the Court **GRANTS** Habitat for Humanity's Motions to Dismiss [102]. For the reasons stated below, the Court **GRANTS** each of Defendants' Oakland County, Southfield, and SNRI's Motions to Dismiss [98] [99] [100].

---

[1] Plaintiff fails to state a claim against Habitat by failing to allege how an apparent conflict of interest or transfer of money to Habitat caused him harm. Plaintiff also makes no allegations as to how Habitat's receipt of money amounted to a wrongdoing, fraud, or was in anyway misleading to Plaintiff.

**FACTUAL BACKGROUND**

The facts, as summarized by the Magistrate Judge, have been adopted by this Court in a prior order. They are as follows:

### A. State Court History

The instant lawsuit concerns the property commonly known as 5000 Town Center, Unit 1304, Southfield, MI 48075, which was conveyed to Dell Johnson as early as 2012 for consideration of $41,000.00. (ECF No. 1, PageID.22-23.) On June 7, 2016, the Oakland County Treasurer filed a property tax foreclosure action as to multiple pieces of real property, seemingly including Johnson's condominium. *See In the Matter of the Petition of the Treasurer's Office of the County of Oakland, Michigan, for the Foreclosure of Certain Lands for Unpaid Property Taxes*, Case No. 2016-153362-CZ (Oakland County Circuit Court).

On January 17, 2017, Johnson agreed to pay his past due 2013 property taxes ($2,711.72) before February 28, 2017. He appears to have paid a total of $2,400.00 on February 27, 2017. On or about March 6, 2017, he paid the remaining $311.72, plus $2.67 for an additional week of interest, and signed a 2017 LS Delinquent Property Tax Payment Plan, within which he committed to paying $260 per month to the Oakland County Treasurer toward his property tax delinquency for 2014 and 2015. The first payment was to be received before

March 31, 2017.

Meanwhile, it appears that, on February 8, 2017, judgment was entered vesting absolute title to the property in the Oakland County Treasurer. (ECF Nos. 3 9-3, 13-2; see also ECF No. 1, PageID.23.) At the same time, Oakland County Treasurer, Andrew E. Meisner, signed a notice of judgment. (*Id.*) Within that calendar year, the property was twice conveyed: (1) on July 31, 2017, Oakland County Chief Deputy Treasurer, Jody Weissler DeFoe, signed a deed which conveyed it in fee simple interest to grantee City of Southfield for the sum of $8,296; and, (2) three months later, on October 31, 2017, Mayor Kenson J. Siver and City Clerk Nancy L.M. Banks signed a quit claim deed, which quit claimed the City of Southfield's interest to Southfield Neighborhood Revitalization Initiative, L.L.C. (SNRI) for the sum of $1.00. (ECF No. 1, PageID.23.)

Johnson's efforts in 2018 to set aside the judgment of foreclosure were unsuccessful. On or about March 21, 2018, Johnson, then represented by counsel, filed a motion to set aside judgment of foreclosure, which the court denied on April 30, 2018. (ECF Nos. 9-4, 13-3, 13-4.) Johnson filed a pro se motion for reconsideration, which the court denied on May 22, 2018. (ECF Nos. 13-5, 13-6.) On June 11, 2018, SNRI secured a possession judgment. (ECF Nos. 9-5, 9-6 [Case No. LT 18 0991 (46th District Court)].)

### B. Prior E.D. Mich. Case

On July 27, 2018, Johnson initiated a lawsuit in pro per against Defendants City of Southfield, Oakland County, Andrew E. Meisner, Jody Weissler Defoe, and SNRI. *Johnson v. City of Southfield*, et al., Case No. 2:18-cv-12348-AJT-APP (E.D. Mich.). Thereafter, counsel entered an appearance on Plaintiff's behalf and, on August 27, 2018, filed an amended complaint, which alleged, *inter alia*, violations of Plaintiff's rights to due process, just compensation, and equal protection. Among other things, Johnson generally alleged that "[t]he taking of [his] property and equity is an unlawful government taking without compensation, and without proper notice to [him]." (*Id.*, ECF No. 13, PageID.179 ¶ 10.)

On January 8, 2019, the Court granted Defendant SNRI's and the County Defendants' motions to dismiss, entered judgment, and closed the case. *Johnson v. City of Southfield*, No. 18-12348, 2019 WL 130291 (E.D. Mich. Jan. 8, 2019). (*See also* ECF Nos. 9-2, 22-2, 50-2.)

### C. The Instant Case

Plaintiff filed the instant case in pro per on May 29, 2019. (ECF No. 1.). The Court previously denied the Defendants' motions to dismiss without prejudice in order to await the decisions of *Rafaeli, LLC v. Oakland Cty.*, No. 156849 (Mich.) and *Freed v. Thomas*, No. 18-2312 (6th Cir.). Since then, Plaintiff has

filed an Amended Complaint with the following claims: Count I – *Monell* claim for taking without just compensation; Count II – post- taking claim for just compensation- inverse condemnation; Count III – civil RICO; Count IV – Procedural due process; Count V – Substantive due process[2]; Count VI - Unjust enrichment.

## LEGAL STANDARD

Defendants move to dismiss the suit pursuant to Fed. R. Civ. P. 12(b)(1) based on claim preclusion. "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys*.

Defendants move to dismiss for Plaintiff's failure to state his claims pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's]

---

[2] Plaintiff failed to address this claim in his Response. It has therefore been abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Res Judicata

Defendants Oakland County and Southfield argue that Plaintiff's Amended Complaint is barred by claim preclusion. They further argue that Plaintiff is barred from re-litigating res judicata, because this Court already dismissed a prior suit by Plaintiff based on res judicata. The Court concurs with Defendants in so far as Plaintiff's claims against Oakland County are precluded.

"Claim preclusion 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Abbott v. Mich.*, 474 F.3d 324, 331 (6th Cir. 2007) (quoting *Adair v. State*, 470 Mich. 105 (Mich. 2004)).

Here, Plaintiff first raised his due process claim against Oakland County in state court after foreclosure. In that case, he moved for the circuit court to set aside his judgment of foreclosure, because the Treasurer made false and misleading statements regarding the delinquent tax payment plan. (ECF No. 100-3,

PageID.2098). The circuit court denied Plaintiff's motion, reasoning that the plan's language was not misleading and clearly stated that if no payments were made, Plaintiff would lose his property. (ECF No. 100-4). Even though Plaintiff did not allege all the facts he does here—most notably that the Treasurer told him to ignore the foreclosure notices—Plaintiff certainly had the opportunity to do so. Plaintiff also had the opportunity to raise his takings and unjust enrichment claims against Oakland County, but failed to do so.

This Court dismissed Plaintiff's first case in this Court for the same reason. *Johnson v. City of Southfield*, et al., Case No. 2:18-cv-12348-AJT-APP, ECF No. 36 (E.D. Mich.). The Court dismissed Plaintiff's due process and takings claims, *inter alia*, against Defendants Oakland County, Southfield, and SNRI as being barred by both *Rooker-Feldman* and res judicata. *Id.* The Court noted the following under each holding: 1) "Unhappy with the state court result, Mr. Johnson asks this Court to either set aside, or ignore, the state court Judgment and order the enjoinment of any subsequent conveyance of the Property. . . Although Mr. Johnson couches his argument in constitutional terms, it is clear from the allegations that he merely seeks the appellate review of the state court's ruling." and 2) "Mr. Johnson had numerous opportunities to present his case (and to pay his delinquent taxes). The Circuit Court ruled on the merits; the Circuit Court action and the instant action involve the same

Page **8** of **17**

parties; and all issues raised here were either resolved, or could have been resolved, in the state court." *Id.*

Defendants argue that the Court is bound by this prior ruling. However, "a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits for preclusive purposes." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (quoting *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000)). Despite this, the Court follows the same reasoning in barring Oakland County Defendants from re-litigating its state court case here.

After Plaintiff's first case was dismissed, he re-filed this case shortly after. At that point, this Court declined to immediately consider the jurisdictional and substantive merits of Defendants' motions to dismiss, in order to wait and see if pending cases, *Freed* and *Rafaeli* warranted significant legal changes that would require the Court to rule differently this time around.

These rulings, however, did not result in consequential holdings for Plaintiff's claims. *Freed* held that a taxpayer's federal lawsuit was not barred by the Tax Injunction Act or the principle of comity—both are issues that do not bear on this case. *Freed v. Thomas*, 976 F.3d 729, 732 (6th Cir. 2020). *Rafaeli* held only that former property owners had a right to the surplus proceeds of a tax foreclosure auction and stopped short of ruling that owners also had a right to surplus equity in

their home. *Rafaeli, LLC v. Oakland Cty.*, 505 Mich. 429 (2020). Therefore, considering that Plaintiff already litigated his due process claim, and had the opportunity to litigate his other claims against Oakland County in state court, Defendants Oakland County and Treasurer are dismissed.

## II.   5th Amendment Takings Claim

Plaintiff alleges that Defendant Southfield violated the Fifth Amendment's Takings clause by foreclosing on his property and failing to compensate him with the surplus equity in his home. Defendant Southfield seeks to dismiss the claim, because Plaintiff does not have a property interest in his home's equity after foreclosure. The Court agrees with Defendant's argument.

Plaintiff's Takings claim fails, because he only had a cognizable property interest in the surplus of a foreclosure auction, not any surplus equity based on the fair market value of the property. The city of Southfield states that "[u]nder Michigan law, as held in *Rafaeli,* the only property interest that survives after title vests in the Treasurer is in potential proceeds from a tax-foreclosure sale over and above the delinquent tax amount, 'no more, no less.'" (ECF No. 100, PageID. 2068 (citing *Rafaeli,* 505 Mich. at 484.)).

*Rafaeli* held that property owners are entitled to surplus proceeds from an auction sale and not necessarily equity in the property if it were not sold in an

auction. 505 Mich. 429. In fact, the Supreme Court wrote the following on the subject: "we are unaware of any authority affirming a vested property right to equity held in property generally. Nor is it necessary for us to do so here." *Rafaeli, LLC.*, 505 Mich. at 484, n. 134. Although *Rafaeli* does not explicitly close the door to this conclusion, its reasoning does not lend support to it either.

As a general matter, property interest is established by state law, not federal. "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (quotation marks and citation omitted).

Judge Borman found the following about *Rafaeli* in a recent decision.

> [T]he Michigan Supreme Court made clear in *Rafaeli* that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds resulting from the tax-foreclosure sale, if any, resulting from the sale of the property at an auction. The *Rafaeli* court stated that it is "unaware of any authority affirming a vested property right to equity held in property generally." *Id.* at 484 n. 134; *see also Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at *3-4 (E.D. Mich. Feb. 26, 2021) ("Plaintiff has failed to cite any law – Constitutional, statutory, precedential, or otherwise – that supports his equity-based argument" "that the property taken was the home's equity minus the debt owed"). Justice Viviano recognized in his concurrence that "the majority's

Page **11** of **17**

> view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have been produced or retained by the government." *Rafaeli*, 505 Mich. at 518 (Viviana, J. concurring) [sic].

*Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at *12–13 (E.D. Mich. May 21, 2021) (J. Borman). Here, Plaintiff's property was not sold in an auction, it was transferred to the City of Southfield and then SNRI. Despite this, Plaintiff has not identified any state or independent source of law that vests a property right to equity after foreclosure.

Plaintiff has not shown, and the Court has not found, any authority stating that the recipients of property from a government agency which took the property from the owner, can be held liable under the Takings clause. The Takings claims (Count I and II) against Defendants are dismissed.

### III. Procedural Due Process

The cornerstone of procedural due process is notice and opportunity to be heard. Here, Plaintiff alleges that although he received foreclosure notices and in theory had the opportunity to be heard at a foreclosure hearing, the County Treasurer's misleading policies and practices prevented him from paying attention to the notices and ultimately availing himself of the opportunity to contest foreclosure.

Plaintiff states that he entered into a payment plan for his 2013 and 2014 delinquent property taxes on March 24, 2016. Upon signing the plan, Plaintiff acknowledged that "monthly payments must be received before the first day of the month" and that failure to make "consistent and timely payments every month" would result in loss of his property. (ECF No. 98-2). The plan additionally states that the Treasurer's office would continue to send tax foreclosure notices, continue the foreclosure procedure, and add interest until the delinquent taxes were paid in full. (*Id.*).

Despite this language, Plaintiff claims that he was orally informed by the Oakland County Treasurer to "ignore such notices" since he was part of the payment plan. (Am. Compl. ¶ 145). Meanwhile, the County continued to accept Plaintiff's late and partial payment without consequence and failed to notify him of his default of the payment plan and re-activation of the foreclosure of his property. (Am. Compl. ¶¶ 150-51). Plaintiff claims that the County's misleading practices amount to a deprivation of his procedural due process rights. Defendant Oakland County's response is simple: the payment plan's language is sufficiently clear to communicate that failure to make full and timely payments would lead to losing your property; foreclosure was merely a matter of course; no further notice was required. The Court concurs with Oakland County.

"[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jackson v. Southfield Neighborhood Revitalization Initiative*, No. 344058, 2019 WL 6977831, at *6 (Mich. Ct. App. Dec. 19, 2019), *judgment vacated in part, appeal denied in part*, 953 N.W.2d 402 (Mich. 2021) (citing *Wayne Co. Treasurer Petition*, 478 Mich. at 9, quoting *Jones v. Flowers*, 547 U.S. 220, 226; 126 S. Ct. 1708; 164 L. Ed. 2d 415 (2006)).

In Michigan Court of Appeals case, *Jackson v. Southfield Neighborhood Revitalization Initiative,* the court decided this issue and held that due process did not require additional notice. In *Jackson*, the court reasoned that "the payment plans themselves were clear that failure to comply with terms of the agreement would result in a loss of property" and the "warnings were clear that plaintiffs were required to make consistent and timely payments to avoid losing their properties." 2019 WL 6977831, at *7. The Court agrees with this reasoning.

Defendant Southfield additionally argues that it played no role in depriving Plaintiff of adequate due process. Plaintiff's procedural due process claim only concerns the County's misleading foreclosure practices. Under the GPTA and the contract signed by Plaintiff regarding the payment plan, the City takes no part in the

Page **14** of **17**

foreclosure process. They may only be involved after final judgment of foreclosure in order to exercise its right of first refusal. In fact, this count in Plaintiff's Complaint mentions no allegations against Southfield. Therefore, Plaintiff has failed to state a due process claim against the City.

### IV. RICO claim

Defendants argue that Plaintiff's RICO claim should be dismissed, because he fails to meet the heightened pleadings standard for allegations of fraud. This heightened pleading standard requires Plaintiff to "allege the time, place, and content of the alleged misrepresentation [or omission] on which [Plaintiffs] relied [and] the fraudulent scheme" *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461, 470 (6th Cir. 2014) (noting that to satisfy this heavy burden, "plaintiffs must identify each misleading or false statement and explain how it is misleading.").

Plaintiff attempts to argue that this heightened pleading standard does not apply when the statements themselves are not alleged to be misrepresentation, but are merely part of a fraudulent scheme. However, Plaintiff's Complaint betrays his argument, because he specifically alleges that false statements were sent to him by defendants.

> 136. Plaintiff relied on the false statements, regarding the scheme, which was transmitted through the mail and electronic commerce.
> 138. There were email correspondence and mail through the USPS that contained misrepresentations and false statements between the RICO

> Defendants and the Plaintiff which effected and was transmitted through interstate commerce on numerous occasions.

(Am. Compl. ¶¶136, 138). However. nowhere in Complaint does he allege who specifically sent these mailings and what the statements contained. He has therefore failed to meet the pleading standard for fraudulent acts. This claim is dismissed.

### V. Unjust Enrichment

To sustain an unjust enrichment claim, a plaintiff must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to the plaintiff as a result. *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 546 (1991); *Karaus v. Bank of New York Mellon,* 300 Mich. App. 9, 23 (2013). Plaintiff claims that all defendants except Oakland County have been unjustly enriched by retaining the surplus equity in his home. Defendants claim that Plaintiff cannot assert this, because they only received the property from a third party and when a defendant receives a benefit from a third party, and not through the action of the plaintiff directly, there is no receipt of a benefit by defendant from the plaintiff, as required for an unjust enrichment claim. *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 23 (2012). However, Courts have found that this *Karaus* holding "does not stand for the proposition that a plaintiff may prevail against a defendant on an unjust enrichment theory only if the plaintiff directly conferred a benefit upon the defendant. On the

contrary, the court in *Karaus* recognized the possibility that a plaintiff may recover from a defendant upon whom he did not confer a benefit if the defendant has engaged in misleading conduct that led to the plaintiff's loss." *Kerrigan v Visalus, Inc*, 112 F. Supp. 3d 580 (E.D. Mich. 2015). This means that Plaintiff can sustain a claim against Defendants if he alleges evidence of misconduct, wrongdoing, or a scheme. *See Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008); *Reid v Bank of Am.,* 2019 U.S. Dist. Lexis 13805 (E.D. Mich. 2019).

Plaintiff has not plausibly alleged such conduct. Plaintiff's allegations are terse, conclusory, and lack specificity to support a claim. Additionally, Plaintiff's allegations merely amount to Defendants' lawful use of Michigan's foreclosure law. Therefore, this claim is dismissed.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motions to Dismiss **[98] [99] [100] [102]** are **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: August 18, 2021                    Senior United States District Judge